UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TERRY DEETZ, | ) | Case No.: 1:05 CV 1597 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| OHIO MOTORISTS ASSOCIATION, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending before the court is Defendant Ohio Motorist Association's ("Defendant" or "OMA") Motion for Summary Judgment ("Motion"). (ECF No. 22-1.) For the reasons set forth below, Defendant's Motion is denied.

## I. FACTS AND PROCEDURAL HISTORY

On May 7, 1992, Plaintiff Terry Deetz ("Plaintiff" or "Deetz") became an employee of OMA, located in Independence, Ohio. (Deetz Dep. 12:3, attached as Ex. A to Def.'s Mot., ECF No. 22-2; *see* Complaint 1, ECF No. 1.) Deetz worked as a licensed customer service representative for OMA. (Deetz Dep. at 13:19-14:6; 15:21-24.) Throughout her tenure at OMA, Deetz struggled with poor health. In addition to suffering a herniated disk, a bad back, a rapid heart beat, and type two diabetes, Deetz had "a number of major surgeries" while employed at OMA, including "surgery on [her] leg[,] twice." (Deetz Dep. at 17:6-12; 18:5-9.) As a consequence of her medical ailments, Deetz exercised her right to employment leave pursuant to the Family and Medical Leave Act

("FMLA"), 29 U.S.C. §§ 2601 *et. seq.*, at least three times. (Deetz Dep. 20:13-20:19.)

On October 20, 2003, Deetz submitted a letter of resignation to OMA, explaining that she "had been granted state disability benefits" that she believed would preclude her from further working at OMA. (*See* Deetz's Resignation Letter, attached as Ex. A to Def.'s Mot., at 21.) However, Elaine Babcock ("Babcock"), OMA's Benefits Administrator, allegedly "talked Deetz out of it" after Babcock determined that "Deetz would become ineligible for disability benefits" if she were to resign. (Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n") 6, ECF No. 35.) Deetz subsequently wrote a letter to OMA, received on October 27, 2003, clarifying that she would "not be resigning . . . but [would] go on disability [leave]." (*See* Deetz's Second Letter, attached as Ex. A to Def.'s Mot., at 31.)

On February 10, 2004, Babcock informed Deetz that she was eligible for FMLA leave. (*See* Babcock's February 10, 2004, Letter, attached as Ex. A to Def.'s Mot., at 34.) That same day, Deetz decided to take FMLA leave, and was granted leave from February 10, 2004, to May 3, 2004. (Deetz Dep. at 47:5-10.) The FMLA has two requirements for eligibility, in that the employee must have been "employed i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). It is undisputed that Deetz had not worked 1,250 hours during the twelve months preceding her final FMLA leave. (*See* Def.'s Mot. at 9; Pl.'s Opp'n at 7.) It is also undisputed that Babcock was mistaken in her determination that Deetz was eligible for FMLA leave. (*See* Def.'s Mot. at 15; Pl.'s Opp'n at 7.)

The parties dispute many of the events that transpired after Deetz was granted her final FMLA leave. It is undisputed, however, that Babcock sent Deetz two letters, postmarked February

26, 2004, and April 7, 2004, informing Deetz that her FMLA leave extended through May 3, 2004. (*See* Babcock's February 26, 2004, and April 7, 2004, Letters, attached as Ex. A to Def.'s Mot., at 39, 49.) It is also undisputed that Deetz did not return to OMA to work before the expiration of her FMLA leave, and that she was at some point terminated as an OMA employee.

Deetz maintains that she could not have known whether she was able to return to work at OMA until after her appointment with Dr. Robert Keating ("Dr. Keating") on May 7, 2004. (Deetz Dep. at 64:1-7.) Even though Deetz was aware that her FMLA leave expired May 4, 2004, she "thought it would be okay to wait until the 7th" and therefore did not attempt to reschedule the appointment. (*Id.* at 64:8-18.) According to Deetz, some time between February 28, 2004, and April 7, 2004, Babcock allegedly told her "not to worry" about returning by May 4, 2004, and to "just do what [Dr. Keating] said." (*Id.* at 60:25-61:8; *see* Pl.'s Opp'n at 9.) After receiving the April 7 letter, Deetz allegedly telephoned Babcock to arrange a meeting on May 3, 2004. (Deetz Dep. at 64:19-65:22.) Deetz has stated that she did not intend to return to work on this date. (*Id.* at 67:10-14.)

Deetz asserts that she arrived at OMA on May 3, 2004, around "mid-morning," some time past 9:00 a.m. but "before lunch." (*Id.* at 66:12-18.) OMA points out that Deetz attended a 10:00 a.m. appointment at Ohio Physical Therapy, located in Westlake, that same morning.[1] (*Id.* at 84:2-9.) Deetz contends that, after discussing her likelihood of receiving long-term disability benefits with Babcock, Babcock then fired her. (*Id.* at 69:7-20.) Deetz maintains that she did not "object or

---

[1] OMA argues that this evidence bolsters their contention that the May 3, 2004, meeting never occurred. (Def.'s Reply 9, ECF No. 38.) However, pursuant to summary judgment standards, the court is to view all factual conflicts in a light most favorable to Plaintiff. Furthermore, the court notes that it is not impossible for both of these events to have occurred that morning, despite the considerable distance between Independence and Westlake and the short span of time in which the May 3, 2004, meeting at OMA could have taken place.

-3-

protest that decision" because Babcock was "the person in authority" and she did not think that she was in a position "to argue that point being that [she] was still out on leave." (*Id.* at 73:23-74:17.) Deetz never voiced her belief that she had until May 7, 2004, to return to work. (*Id.* at 74:18-75:2.) According to Deetz, after learning of her termination, she proceeded to hand in her swipe card and left to discuss her 401K plan with Cheri Torchia. (*Id.* at 69:23-70:9.) She and Babcock then went into the office of Boba Mohorcic ("Mohorcic"), Deetz's supervisor, where some of Deetz's personal belongings had been left in a box. (*Id.* at 70:10-14.)

OMA argues that there was no meeting on May 3, 2004. (Def.'s Reply 7-9, ECF No. 38.) According to OMA, "Plaintiff's employment was not terminated by Defendant until after the [May 3, 2004] expiration of Plaintiff's FMLA leave." (*Id.* at 6.) The depositions of Babcock and Mohorcic support this contention. Babcock stated that the May 3, 2004, meeting never happened, and Mohorcic stated that Deetz did not pick up her box of personal belongings until after May 4, 2004. (Babcock Dep. 32:10-14, 52:8-25, ECF No. 41-1; Mohorcic Dep. 18:1-10, attached as Ex. A to Def.'s Reply, ECF No. 38-2.)

Furthermore, Babcock stated at her deposition that she did not begin termination proceedings until the end of the day on May 4, 2004. In support, OMA points to the "Status Change" form signed by Babcock on May 4, 2004, indicating Deetz had been terminated, effective May 3, 2004, because she "did not return from FMLA." (Babcock Dep. at 51:7-22; Def.'s Reply at 6; *see* Status Change Form, Ex. 3, ECF No. 41-4.) Mohorcic remembers signing the form on May 4, 2004. (Mohorcic Dep. at 18:1-3.) OMA notes that Mohorcic also "signed and dated the Supervisor's Checklist for Exiting Associate on May 10, 2004." (Def.'s Reply at 8); *see* Mohorcic Declaration ¶ 3, Ex. C, ECF No. 38-4.)

-4-

The parties also dispute whether Deetz was capable of performing the essential functions of her job upon the end of her FMLA leave. Pursuant to 29 C.F.R. § 825.214, an employee is not entitled to reinstatement of her position after taking FMLA leave if the employee is no longer capable of performing all of the essential functions of the job. Deetz's job description delineates her responsibilities and suggests that they were not of a physically demanding nature. (*See* Job Description, Ex. A of Def.'s Mot. at 20.) Babcock stated at her deposition that Deetz's job was primarily "sedentary" and that Deetz's medical setbacks did not, at least in 2003 or 2004, "impact . . . the essential functions of her job." (Babcock Dep. at 39:2-15) However, Deetz recalled while being deposed that her work also required her to do "a lot of filing, a lot of bending, [and] stooping." (Deetz Dep. at 15:25-16:5.) At her deposition, Deetz addressed the extent of her physical capabilities as of May 3, 2004:

> Q: On May 3, 2004, could you walk?
> A: Yes, short – short distances.
> Q: On May 3, 2004, could you sit comfortably?
> A: Not comfortably. I could sit, yes.
> Q: At that time, May 3, 2004, were you able to perform all of your job duties?
> A: A little slow, but I probably would be able to perform them. Maybe not 100 percent, but forcing myself, I guess I could have done that.
> Q: Well, if it was not at 100 percent, what – what things would you not have been able to do at 100 percent?
> A: Reaching and stooping and lifting.
> Q: Could you have done filing?
> A: That would be reaching and bending down. It would have been a little difficult.
> Q: At that time, May 3, 2004, could you have worked a full 40-hour work week?
> A: I don't know for sure. I don't know.

(Deetz Dep. at 73:1-22.) Deetz notes that Dr. Keating believed that she was able to return to work on May 4, 2004, and that he would have certified her as being able to work had he been contacted

by OMA.[2] (Pl.'s Opp'n at 10; *see* Declaration of Robert J. Keating, M.D. ¶ 5, attached as Ex. 3 to Pl.'s Opp'n, ECF No. 35-3.)

On June 10, 2005, Deetz filed the instant suit against OMA and The Prudential Insurance Company of America.[3] (*See* Complaint.) Deetz seeks damages against OMA for alleged violations of her rights under the FMLA. On August 1, 2006, Defendant moved for summary judgment. (*See* Def.'s Mot., ECF No. 22.)

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

Fed. R. Civ. P. 56(c). Federal Rule of Civil Procedure 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein . . . . The court may permit

---

[2] While OMA has proffered as evidence Dr. Keating's correspondence with the Ohio Department of Job and Family Services, this evidence is inadmissible pursuant to Ohio Revised Code § 4141.21, which states: "the information maintained by the director of job and family services or furnished to the director by employers or employees . . . shall not be open to the public or be used in any court in any action or proceeding pending therein, or be admissible in evidence in any action . . . ." Therefore, the court shall not consider it.

[3] On August 4, 2005, Deetz filed a Notice with the court dismissing, with prejudice, The Prudential Insurance Company of America as a party to the instant litigation, pursuant to Federal Rule of Civil Procedure 41(a)(1)(i). (ECF No. 7.)

>affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standard. Thus, in most civil cases the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-*

*Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### III. LAW AND ANALYSIS

### A. FMLA Standards

The FMLA permits employees to take up to twelve weeks of unpaid leave annually if they have a serious health condition. 29 U.S.C. § 2612(a)(1)(C).[4] The FMLA provides that, upon expiration of the employee's leave, the employee is entitled to be restored either to the position that she held when her leave began or to an equivalent position. 29 U.S.C. § 2614(a)(1).

The Sixth Circuit has recognized two distinct theories of recovery under the FMLA. *Hoge v. Honda of America Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004). First, there is the "interference" or "entitlement" theory under 29 U.S.C. § 2615(a)(1), which reads, "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *See Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 335 (6th Cir. 2005) (citation omitted); *Kitts v. Gen. Tel. North, Inc.*, 2005 U.S. Dist. LEXIS 20421 *25 (S.D.

---

[4] In addition to giving employees these twelve weeks, OMA has a practice of granting additional time, up to 180 days, in "cases supported by medical certification." (Def.'s Mot. at 8-9.) When Deetz had provided certification in the past, additional time had been granted. (*See* Babcock Aff ¶ 6, ECF No. 23.) It is undisputed that Deetz did not provide any medical certification in support of extending her final FMLA leave period prior to her termination.

Ohio 2005). Such employer behavior will subject it to civil liability under the act. 29 U.S.C. § 2617.

The second theory of recovery under the FMLA is a "retaliation" or "discrimination" claim arising under 29 U.S.C. § 2615(a)(2), which prohibits employers from discharging, or discriminating against, employees who oppose unlawful FMLA practices. *See id.* (citing *Hoge*, 384 F.3d at 244). In the instant case, Deetz seeks recovery under the interference theory.

A plaintiff asserting an FMLA "interference" claim must establish the following by a preponderance of the evidence that:

> (1) she is an eligible employee, as defined in 29 U.S.C. § 2611(2);
> (2) Defendant is a covered employer, as defined in 29 U.S.C. § 2611(4);
> (3) she was entitled to take leave under the FMLA, [29 U.S.C. § 2612(a)(1)];
> (4) she gave adequate notice of her intention to take leave, [29 U.S.C. § 2612(e)(1)]; and
> (5) Defendant denied her FMLA benefits to which she was entitled or otherwise interfered with her FMLA rights.

*Kitts*, 2005 U.S. Dist. LEXIS 20421 *25-26 (citations omitted); *see also Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). In the instant case, Defendant argues that it is entitled to summary judgment for two reasons; first, because Deetz was not an eligible employee as defined by 29 U.S.C. § 2611(2), and second, because Deetz was not able to perform the essential functions of her job upon the expiration of her FMLA leave. (Def.'s Mot. at 14-25.)

### B. Deetz's Eligibility for FMLA Leave

The parties dispute whether Deetz can show that she was eligible to take FMLA leave. For an employee to be eligible for FMLA leave, the employee must be "employed i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title;

and ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). OMA argues that Deetz was not an eligible employee because she had not worked 1,250 hours in the twelve months preceding her leave. (Def.'s Mot. at 14-19.) Deetz argues that because Babcock told her she was eligible for FMLA leave and because she relied on Babcock's representation to her detriment, OMA should be equitably estopped from asserting her ineligibility. (Pl.'s Opp'n at 19-23.) For the reasons set forth below, the court finds that equitable estoppel could apply in the instant case. Whether it applies, however, is a genuine issue of material fact in dispute that precludes summary judgment.

Equitable estoppel is a doctrine "properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001). The Sixth Circuit has articulated the following test for determining when equitable estoppel is applicable:

> 1) conduct or language amounting to a representation of material fact;
> 2) awareness of true facts by the party to be estopped;
> 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended;
> 4) unawareness of the true facts by the party asserting the estoppel; and
> 5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Mutchler v. Dunlap Memorial Hosp.*, 485 F.3d 854, 861 (6th Cir. 2007) (citations removed). The Sixth Circuit has recognized that "the doctrine of equitable estoppel . . . may apply where an employer who has initially provided notice of eligibility for leave later seeks to challenge that eligibility." *Mutchler*, 485 F.3d at 861 (quoting *Woodford v. Cmty. Action of Greene County, Inc.*, 268 F.3d 51, 57 (2d Cir. 2001)). Indeed, "equitable estoppel is a judicial doctrine of equity which

-10-

operates apart from any underlying statutory scheme." *Mutchler*, 485 F.3d at 861 (quoting *Kosakow*, 274 F.3d at 724). Pursuant to *Mutchler*, the court therefore finds that equitable estoppel *could* be available to Deetz if applicable to the facts of the instant litigation.

OMA contends that *Rocha v. Sauder Woodworking Co.*, 221 F. Supp. 2d 818 (N.D. Ohio 2002), suggests that Deetz cannot use equitable estoppel. (*See* Def.'s Mot. at 16-17.) However, in *Rocha*, unlike in the instant case, the employer never made any kind of an affirmative representation to the employee that she was eligible for FMLA leave. Rather, when "[the employer] met with the plaintiff, [the employer] did not know whether [the plaintiff] was eligible for such leave because it was not his job to know such information." *Id.* at 822. *Rocha* is therefore inapposite.[5]

It is well-established that "[w]hether equitable estoppel applies in a given case is ultimately a question of fact." *Love v. County of Wayne*, No. 04-CV-73133, 2005 WL 1529603, at *9 (E.D. Mich. June 24, 2005) (quoting *Kosakow*, 274 F.3d at 725). For equitable estoppel to apply to the instant case, Deetz needs to be able to satisfy each of the elements listed above. The court finds that Deetz satisfies the requirement that OMA engaged in conduct or language amounting to a representation of material fact, as OMA's letter explicitly stated that Deetz was eligible for FMLA leave. There is also no question that OMA intended for Deetz to take notice of the February 10, 2004, letter and use it to take a new leave if she wished to do so. However, the court finds that a rational trier of fact could come to different conclusions concerning whether OMA was aware that Deetz had not worked at least 1,250 hours over the preceding 12-month period.[6] For example, a

---

[5] Another case upon which OMA relies, *McQuain v. Ebner*, 55 F. Supp. 2d 763 (N.D. Ohio 1999), applies only to situations related to 29 C.F.R. § 825.110(d) regulations, which have no bearing on the instant case.

[6] It is undisputed that Deetz had not worked the requisite 1,250 hours.

-11-

jury could conclude that OMA was aware that Deetz was not eligible, as Babcock stated in her deposition that she was "well versed" on the FMLA. (Babcock Dep. at 13:10-11.)  Additionally, a rational trier of fact could conclude that Deetz was unaware of the hours requirement, despite the multiple times that she had taken FMLA leave.  Finally, there is a factual conflict as to whether Deetz detrimentally and justifiably relied on Babcock's representation.  A rational trier of fact might believe Deetz's claim that "if [OMA] had informed her that she was not eligible or entitled to take FMLA leave commencing February 10, 2004, then [she] would have delayed surgery and instead returned to work and not taken FMLA leave." (Pl.'s Opp'n at 7; *see* Deetz Decl. ¶ 4., attached as Ex. 2 to Pl.'s Opp'n, ECF No. 35-2.)  Therefore, the court finds that whether equitable estoppel is applicable to the instant case is a disputed issue of material fact precluding an award of summary judgment in OMA's favor.

### C. Deetz's Ability to Perform the Essential Functions of Her Job

The parties dispute whether Deetz was capable of performing all of the essential functions of her job upon the expiration of her FMLA leave on May 4, 2004.  As stated above, 29 C.F.R. § 825.214(b) permits an employer to not reinstate an employee upon the expiration of her FMLA leave if the employee is incapable of performing all of the essential functions of her job.  The Sixth Circuit has acknowledged this right.  *See Edgar v. JAC Prods.*, 443 F.3d 501, 506-507 (6th Cir. 2006) ("[A]n employer does not violate the FMLA when it fires an employee who is indisputably unable to return to work at the conclusion of the 12-week period of statutory leave.").  OMA argues that Deetz was unable to return to work because her medical condition precluded her from reaching, stooping, and lifting, physical actions which OMA claims were required for Deetz to perform the essential functions of her job.  (Def.'s Mot. at 22-25.)  Conversely, Deetz argues that she "has never

admitted that she could not perform the essential functions of her job and, to the extent that her testimony is ambiguous, the court must view it in the light most favorable to her." (Pl.'s Opp'n at 17.) For the reasons stated below, the court finds that whether Deetz was able to perform the essential functions of her job is a disputed issue of material fact which precludes awarding summary judgment to OMA.

OMA's argument that Deetz's difficulty reaching, stooping, and lifting on May 4, 2004, constituted failure to perform the essential functions of her job is unpersuasive. (Def.'s Mot. at 22-23.) Determining what functions of the job are essential is a question of fact. *See Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1005 (6th Cir. 2001). A rational trier of fact could conclude that reaching, stooping, and lifting did not prevent Deetz from performing any of the essential functions of her job. For example, while "[maintaining] current and accurate files" is listed among Deetz's many responsibilities on her job description, Deetz never stated that she could not perform filing but rather stated merely that filing would be "a little difficult." (*See* Deetz's Job Description at 20; Deetz Dep at 73:16-18.)

Additionally, Babcock characterized Deetz's job as "sedentary." (Babcock Dep. at 39:11-15) Further, Babcock stated during her deposition that Deetz's medical setbacks did not, at least in 2003 or 2004, "[impact] . . . the essential functions of her job." (Babcock Dep. at 39:2-15) Finally, Dr. Keating declared that Deetz was capable of performing all of the responsibilities of her job on May 4, 2004, and that he would have certified Deetz as able to work on May 4, 2004, if he had been contacted by OMA. (*See* Declaration of Robert J. Keating, M.D. ¶¶ 4-5.) Viewing this evidence in the light most favorable to Plaintiff, the court finds that a rational trier of fact could conclude that Deetz was capable of performing the essential functions of her job on May 4, 2004. As this is a

-13-

genuine issue of material fact in dispute, Defendant's Motion for Summary Judgment (ECF No. 22) is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 22) is denied.

The court will hold a final pretrial conference within case on September 5, 2007, at 3:00 p.m.. Trial shall commence on October 22, 2007, at 9:00 a.m. A separate trial order shall issue.

IT IS SO ORDERED.

> /s/ *SOLOMON OLIVER, JR.*
> UNITED STATES DISTRICT JUDGE

July 25, 2007